IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| TYCO HEALTHCARE GROUP LP and UNITED STATES SURGICAL CORPORATION<br><br>Plaintiffs,<br><br>v.<br><br>ETHICON ENDO-SURGERY, INC.<br><br>Defendant. | Civil Action No: 3:10cv0060 (JBA)<br><br>October 24, 2011 |

## DEFENDANT'S SUR-REPLY IN FURTHER OPPOSITION TO PLAINTIFFS' MOTION TO DISQUALIFY

Defendant Ethicon Endo-Surgery, Inc. ("Ethicon") respectfully submits this sur-reply in response to Plaintiffs' Reply in Further Support of Motion to Disqualify Defendant Ethicon Endo-Surgery, Inc.'s Attorneys.

When this issue was first brought to the Court's attention, Plaintiffs' counsel sought permission to depose Mr. Greer, stating that "if it turns out nothing was disclosed, nothing was shared, I suspect Tyco could be absolutely fine with proceeding." Rueh Decl. at Ex. C (Sept. 27, 2011 Tr. at 25-26). But at the deposition, Plaintiffs' counsel failed to even ask if any information was disclosed. Plaintiffs then filed their motion asking the Court to impose an irrebuttable presumption that confidences were shared. After Ethicon pointed out that their argument was contrary to Second Circuit law, Plaintiffs next told the Court that a postponement of trial was necessary to allow time for "much broader discovery" on alleged "additional misrepresentations" in the declarations and "what it is that Akin Gump did." Johnson Decl. at Ex. A (Oct. 12, 2011 Tr. at 5-9, 21). They then secured an extension of the set trial dates and an opportunity to specify

1

in their Reply what additional, "crucial" discovery was needed. But Plaintiffs' Reply requests no additional discovery, barely references the documents produced by Akin Gump, identifies no alleged misrepresentations in the declarations, and continues to assert that, despite their lack of evidence, the Court should just presume that there was some inappropriate disclosure. As we show herein, this is clearly not the law.

Plaintiffs have now deposed Mr. Greer, received detailed declarations from the relevant Akin Gump employees, and reviewed all of the documents relating to Mr. Greer's communications and work on the Ethicon matter. Plaintiffs still have not, and indeed cannot, identify any evidence that suggests that confidential Tyco information was shared. The evidence is uncontroverted—there was no disclosure. Conceding this fact, Plaintiffs offer two new arguments: (1) there is an irrebuttable presumption of sharing when formal, written screening procedures are not implemented; and (2) the mere "opportunity" for an "inadvertent" or "subliminal" disclosure by a nonlawyer is sufficient taint to warrant an exercise of discretion to disqualify an entire law firm, even if the presumption of sharing has been rebutted. Neither proposition is supported by the case law, and Plaintiffs' motion should be denied as being entirely unwarranted.

As the Court knows, disqualification is a severe sanction that is viewed with disfavor and should be imposed only when there is a *significant* risk of trial taint. Plaintiffs simply have not met that burden. There is affirmative, uncontroverted evidence that no sharing of information occurred. Mr. Greer's duties were entirely nonsubstantive, Mr. Greer immediately was removed and screened from the case upon receipt of Plaintiffs' objection, Plaintiffs were permitted to take discovery on this issue, and the Ethicon team will discard and not use or access any of the slides or graphics that Mr. Greer created or modified. Under these circumstances even inadvertent

disclosures are highly unlikely and any potential taint has been dispelled.

Balancing the relevant interests, the substantial hardship that disqualification would work on Ethicon and the public's interest in efficient and timely resolution of this matter outweigh the mere suspicion of possible impropriety relied on by Plaintiffs. Disqualification would deprive Ethicon of its right to freely choose its counsel, resulting in substantial costs to Ethicon, further delay of this litigation, and compromised representation of Ethicon at trial.

For all of these reasons, Plaintiffs' motion should be denied.

## ARGUMENT

### I. ETHICON'S EVIDENCE REBUTTING ANY PRESUMPTION OF SHARED CONFIDENCES IS UNCONTROVERTED

In their Reply, Plaintiffs do not dispute the truthfulness of the declarations submitted by Ethicon, do not identify any documents allegedly indicating an improper sharing of information, and do not seek any additional discovery. Thus, Plaintiffs effectively concede that nothing was shared and the motion should be denied on this basis alone. *See*, *e.g.*, *Arista Records LLC v. Lime Group LLC*, No. 06CV5936, 2011 WL 672254, at *5-6 (S.D.N.Y. Feb. 22, 2011) (finding the presumption to be rebutted where there was no challenge to "the truth of any of the statements" in the declarations and "there are no facts from which it may be inferred that Willkie has obtained confidential information"); *Simons v. Freeport Mem. Hosp.*, No. 06CV50134, 2008 WL 5111157, at *7 (N.D. Ill. Dec. 4, 2008) ("[u]ncontroverted affidavits are sufficient rebuttal evidence") (quoting *Cromley v. Bd. Of Educ. of Lockport Twp. High Sch. Dist. 205*, 17 F.3d 1059, 1065 (7th Cir. 1994)).

Plaintiffs' only response to the evidence produced by Ethicon is that the record is inadequate because (i) the absence of an immediate, written ethical wall effectively creates an irrebuttable presumption of shared confidences; and (ii) it does not negate that there were

3

"opportunities for disclosure." Reply at 7-10. These arguments are unavailing.

    a. <u>The Second Circuit Rejected the Concept of Irrebuttable Presumptions in the Context of Disqualification Motions</u>

Unable to dispute Ethicon's evidence or prove that any sharing of information actually occurred, Plaintiffs instead argue that the absence of an ethical wall effectively creates an irrebuttable presumption of shared confidences. Reply at 7-8. According to Plaintiffs, there is a "requirement of an ethical wall in rebutting the presumption of sharing confidential information," and without such measures, other evidence rebutting the presumption is effectively meaningless. Reply at 9.

In *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, the Second Circuit rejected the concept of an irrebuttable presumption of shared confidences, observing:

> A *per se* rule has the virtue of clarity, but in achieving clarity, it ignores the caution that '[w]hen dealing with ethical principles, … we cannot paint with broad strokes. The lines are fine and must be so marked.'

409 F.3d 127, 135 (2d. Cir. 2005) (citations omitted). For this reason, consideration of a disqualification motion is inherently a fact-intensive inquiry and categorical rules, such as the one advanced by Plaintiffs, are inappropriate. *See id.*; *In re Del-Val Finan. Corp. Sec. Litig.*, 158 F.R.D. 270, 273 (S.D.N.Y. 1994) (stating that "disqualification is a case-by-case determination").

Although the presence of an ethical wall is undeniably a relevant consideration, it is not the *only* factor or means of rebutting the presumption. *See Adams v. Village of Keesville*, No. 8:07CV452, 2008 WL 3413867, at *7 (N.D.N.Y. Aug. 8, 2008) (listing five different ways that large law firms can rebut the presumption of sharing); *United States v. Titan Pac. Constr. Corp.*, 637 F. Supp. 1556, 1565 (W.D. Wash. 1986) ("Evidence of a 'Chinese Wall' is merely one method of rebutting the presumption."). In *Arista Records LLC v. Lime Group LLC*, the district court relied on *Hempstead* to reject *per se* arguments like the one advanced by Plaintiffs:

4

> Plaintiffs suggest that Willkie's delay in implementing the screen is fatal …. Plaintiffs are again advocating the use of "per se" rules that the court in *Hempstead* explicitly rejected.

2011 WL 672254, at *7-8. Indeed, courts have denied motions to disqualify and found the presumption of sharing to be rebutted even in instances of delay or absence of screening measures. *See, e.g., Arista Records*, 2011 WL 672254, at *8; *1210 Colvin Ave., Inc. v. Tops Markets, L.L.C.*, No. 03CV0425E, 2006 WL 3827429, at *9 (W.D.N.Y. Dec. 28, 2006); *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1580 (7th Cir. 1984) ("[T]he presumption of sharing between partners of a firm can be overcome by testimonial evidence, despite the absence of screening."), overruled on other grounds by *Richardson-Merrell Inc. v. Koller*, 472 U.S. 424 (1985)[1]; *Gonzalez v. Central Elec. Coop.*, No. 08CV6236, 2009 WL 3415235, at *2-4 (D. Or. Oct. 15, 2009); *Hamilton v. Dowson Holding Co.*, Civ. No. 2008/02, 2009 WL 2026327, at *4-7 (D.V.I. July 2, 2009); *Simons*, 2008 WL 5111157 at *7; *Titan Pac. Constr.*, 637 F. Supp. at 1565-66.

As detailed below, taking all relevant facts into consideration, Ethicon has provided clear and effective evidence—including the immediate and effective screening of Mr. Greer from the case upon receipt of Plaintiffs' objection—to rebut the presumption of sharing.

    b. <u>Ethicon Met Its Burden of Producing Clear and Effective Evidence to Rebut the Presumption of Sharing</u>

In determining whether a party has provided sufficient evidence to rebut the presumption of shared confidences, courts rightfully require clear, competent, and effective evidence. *See, e.g., Hamilton*, 2009 WL 2026327 at *4; *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 723 (7th Cir. 1982). At the same time, courts have cautioned that "the standard of proof for

---

[1] Decided one year later, *Richardson* implicitly overruled the *Panduit* court's holding that civil disqualification orders constitute immediately appealable final decisions. The Supreme Court's decision did not address or alter the *Panduit* court's rationale in reversing the disqualification order.

rebuttal" must not be "unattainably high." *Laskey Bros. of W. Va., Inc. v. Warner Bros. Pictures*, 224 F.2d 824, 827 (2d Cir. 1955); *Freeman*, 689 F.2d at 723.  For this reason, the Seventh Circuit has stated that "[a]n *absolute* finding of no *possible* inadvertent sharing of confidences is not required to establish an effective rebuttal.  The proof of a negative renders certainty virtually impossible." *Panduit*, 744 F.2d at 1580 (emphasis in original).  Indeed, requiring "absolute certainty … makes the presumption effectively irrebuttable," which would be contrary to Second Circuit law. *Id*. *See also Hempstead*, 409 F.3d at 135.

In addition to the uncontroverted declarations submitted by Ethicon, the Court should consider, among other things, the limited nature of Mr. Greer's involvement in the 2007 trial in determining whether the presumption of sharing has been rebutted.  Specifically, the engagement was over four years ago, Mr. Greer's involvement was very limited in scope, was nonsubstantative, and Mr. Greer has worked on probably more than 100 trials since that time.  Opp. at 3-5.  Additionally, Mr. Greer confirmed that he does not recall any confidential information based on his work on the 2007 trial:

> 2. Were you involved in any key strategy meetings in advance of your in-court involvement at trial?  Do you possess any knowledge of any information which opposing counsel would determine to be an unfair or conflicting advantage to Akin or the client?
>
> I was not involved in any preparation prior to the Clifford Chance team going on-site in New Haven.  Once on-site, I was involved in numerous prep sessions with witnesses and experts.  ***I don't remember any details regarding strategy or testimony.***  I do remember the Clifford Chance team members and their general presentation styles, ***but nothing case specific*** other than it was a patent case involving a surgical cutting and cauterizing device.

Ryan Supp. Decl. at Ex. A (AKIN00004148-49) (emphasis added); Ryan Decl. at Ex. A (p.6). The passage of time, Mr. Greer's inability to recall case-specific details, and the limited nature of his role in 2007 are all further facts that rebut the presumption of sharing.  *See Arista Records*,

2011 WL 672254 at *7-8; *Adams*, 2008 WL 3413867 at *7; *1210 Colvin Ave.*, 2006 WL 3827429 at *9.

Additionally, screening procedures *were* implemented immediately after Ms. Elderkin received Plaintiffs' objection to Mr. Greer's involvement and notice that a conflict may exist. Based on the nature of Mr. Greer's work and his response to Mr. Ficocello's August 8 inquiry, *see* Ryan Supp. Decl. at Ex. A (AKIN00004148-49), there was no reason to believe that Mr. Greer had any confidential information or that a conflict existed and thus no reason to implement a screen. Elderkin Decl. at ¶¶9-11. However, after receipt of Plaintiffs' September 26 email raising concerns about Mr. Greer's involvement, Rueh Decl. at Ex. B, he was removed from the case and screening procedures were implemented and have been followed—despite the fact that there is still no reason to believe that Mr. Greer has any confidential information from his work for TrialGraphix in 2007. Elderkin Decl. at ¶15; Greer Decl. at ¶¶17-18; Ficocello Decl. at ¶29. Though not necessary, Akin Gump further confirmed those screening instructions in writing. Johnson Decl. at Ex. B. Thus, contrary to Plaintiffs' arguments, an effective screen is in place and any risk that an inadvertent disclosure occurred is clearly rebutted by the other facts presented by Ethicon. *See In re Del-Val*, 158 F.R.D. at 274-75.

These facts, combined with the uncontroverted declarations confirming that no confidential information was disclosed, fully rebut the presumption of shared confidences.

**II.  PLAINTIFFS HAVE NOT DEMONSTRATED A SIGNIFICANT RISK OF TRIAL TAINT**

"'Recognizing the serious impact of attorney disqualification on the client's right to select counsel of his choice, [courts] have indicated that such relief should ordinarily be granted only when'" the moving party has met its burden of demonstrating "'a *significant* risk of trial taint.'" *Vincent v. Essent Healthcare of Conn.*, 465 F. Supp. 2d 142, 144-45 (D. Conn. 2006) (quoting

7

*Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981) (citations omitted)) (emphasis added); *Pfizer, Inc. v. Stryker Corp.*, 256 F. Supp. 2d 224, 227 (S.D.N.Y. 2003) (requiring a "material risk to the accuracy or integrity of the Court's adjudicative function"). Because they cannot demonstrate that any actual disclosures occurred—despite having taken discovery on these issues—Plaintiffs resort to arguing that the "risk of even inadvertent disclosures" and speculation that an "attorney *might* have acquired information" justify disqualification. Reply at 9-10 (emphasis in original).

      First, this argument resembles the "appearance of impropriety" standard, which the Second Circuit rejected. *Board of Edu. of the City of NY v. Nyquist*, 590 F.2d 1241, 1247 (2d Cir. 1979). Second, Plaintiffs' speculation and suspicions do not constitute evidence of a substantial or material risk of trial taint, particularly given that Mr. Greer's very limited prior involvement in this case was more than four years ago. *See 1210 Colvin Ave.*, 2006 WL 3827429, at *9 (mere "nagging suspicion" of unfair advantage is insufficient "threat of taint" to justify disqualification); *Panduit*, 744 F.2d at 1581 (noting that where confidential information may have been received "at some remote time in the past," the "probability that any such revival of memory would materially assist" the opposing party is "very small"). Any such risk is negated by the rebuttal evidence and the preventative actions taken by Akin Gump.

      It is undisputed that Mr. Greer has had absolutely no contact or interactions whatsoever with the three Akin Gump partners on the Ethicon trial team—the individuals responsible for decisions on litigation and trial strategies. Greer Decl. ¶12; Elderkin Decl. ¶12. It is also undisputed that Mr. Greer did not provide, and was never asked for, any confidential or privileged information obtained in the course of his work for Plaintiffs as an employee of TrialGraphix. Greer Decl. ¶19; Ficocello Decl. ¶¶20-22, 29; Elderkin Decl. ¶¶12, 17; Munoz

8

Decl. ¶13; Browndorf Decl. ¶¶18-19. Mr. Greer has confirmed that, in his limited work on presentations and graphics for Mr. Munoz, he did not have any discretion as to content, was provided all substantive information either by Mr. Munoz or Mr. Press, and was responsible solely for visual details, such as layout, formatting, and color schemes. Greer Supp. Decl. at ¶¶2, 4-9. The limited nature of Mr. Greer's role is further confirmed by the documents produced by Ethicon. *E.g.*, Johnson Decl. at Ex. C (AKIN00001321: indicating that Mr. Greer would be assisting with projects from "illustration & graphics to any document based call-outs or testimony slides" that Mr. Munoz wanted to develop), (AKIN00001578-79: indicating that Mr. Greer created "placeholder" slides and witness photographs for the opening presentation; also indicating that Mr. Munoz was responsible for "substantive edits"), (AKIN00001342: indicating that Mr. Greer received an excel spreadsheet of non-privileged damages data and "turn[ed] the Excel into PowerPoint slides"), (AKINGUMP00003474-75: indicating Mr. Greer's work with Mr. Press focused on slide layout and text size), (AKIN00001279-80: evidencing Mr. Greer coordinating on courtroom equipment logistics), (AKIN00000042-47, 1287: indicating that Mr. Greer was involved in discussions regarding hotel reservations, Internet access, and war room setup),[2] (AKIN00001303-04, 1386-89, 1564-65: evidencing Mr. Greer's work on the LiveNote deposition database and trial exhibits); Ryan Supp. Decl. at Ex. C (AKIN00001333-35: demonstrating that Mr. Greer was responsible for making the timelines "more visually appealing").

Mr. Greer was immediately removed from the team, stopped all work, and was screened from the case after Plaintiffs objected to his involvement. Greer Decl. ¶12; Ficocello Decl. ¶29. Akin Gump has since confirmed those screening procedures in writing. Johnson Decl. at Ex. B.

---

[2] Ms. Elderkin was referring to these discussions when she stated that Mr. Greer had "involvement in calling the hotel to make trial arrangements." Rueh Decl. at Ex. C (Sept. 27, 2011 Tr. at 23).

Further reducing the risk of inadvertent disclosure is the fact that Akin Gump is a very large law firm with multiple offices and hundreds of attorneys worldwide. *See Arista Records*, 2011 WL 672254 at *6. Additionally, Ethicon has produced Mr. Greer for deposition (Ryan Decl. at Ex. A), provided Plaintiffs with all of Mr. Greer's emails and work files relating to this case (Johnson Decl. at Ex. D), produced all communications even mentioning Mr. Greer's involvement with this case in 2007 (Johnson Decl. at Ex. D), and will agree to not use or access any of the slides or graphics that Mr. Greer created or modified.

Combining all of these facts together with Plaintiffs' inability to point to any evidence even suggesting that an improper disclosure occurred, there is not a substantial risk of trial taint.

### III.   A BALANCING OF THE RELEVANT INTERESTS WEIGHS AGAINST A DISCRETIONARY GRANT OF DISQUALIFICATION

Disqualification is an issue left to the broad discretion of the district courts. *Enzo Biochem, Inc. v. Applera Corp.*, 468 F. Supp. 2d 359, 364 (D. Conn. 2007). Even in the rare instances where all legal elements have been satisfied, the "test establishes when an attorney '*may*,' *not must*, be disqualified." *Battagliola v. Nat'l Life Insur. Co.*, No. 03CV8558, 2005 WL 101353, at *16 (S.D.N.Y. Jan. 19, 2005) (emphasis added). In deciding whether disqualification should be granted courts consider a number of competing interests: (1) the client's "interest in freely selecting counsel of her choice," (2) the adversary's "interest in the trial free from the risk of even inadvertent disclosures of confidential information," and (3) "the public's interest in the scrupulous administration of justice." *Hull v. Celanese Corp.*, 513 F.2d 568, 570 (2d Cir. 1975). On the present facts, the balancing of these interests weighs against disqualification.

First, there can be no doubt that disqualification will result in significant prejudice and harm to Ethicon. Ethicon selected the Akin Gump team based on their long-standing client relationship, their technical backgrounds and expertise, and their extensive trial experience in

patent infringement cases in this field. Kreger Decl. at ¶¶2-3. Ms. Elderkin and most of the attorneys on her team have represented Ethicon from the very beginning of this litigation, and have spent more than seven years learning the complex facts of this case, analyzing the relevant technologies, and developing litigation and trial strategies. Elderkin Decl. at ¶18; Kreger Decl. at ¶¶2-5. It would take a significant amount of Ethicon's time and resources to select and educate new counsel on the lengthy history and complex issues of this case. Kreger Decl. at ¶6. Additionally, the monetary cost of replacing Akin Gump at this late stage would be substantial, and would almost certainly result in compromised representation of Ethicon. Elderkin Decl. at ¶18; Kreger Decl. at ¶¶5-6. The prejudice from compromised representation and the intangible harm to Ethicon of being deprived of its counsel of choice would be immeasurable. Kreger Decl. at ¶6.

Second, although preservation of Plaintiffs' confidential and privileged information is undoubtedly an important interest, it does not outweigh the significant prejudice to Ethicon when there is no risk of inadvertent disclosure. As discussed above, Akin Gump has confirmed that no disclosures have occurred to date, taken measures to dispel any perceived taint, and confirmed in writing the procedures implemented to prevent even inadvertent disclosures going forward. Based on the minimal showing made by Plaintiffs, it cannot be said that there is any meaningful risk, let alone risk significant enough to tip the balancing of interests in favor of disqualification. *See Arista Records*, 2011 WL 672254, at *8 ("Given the 'lack of a meaningful showing that the trial process here will be tainted in any way,' and the significant hardship that disqualification would place on Defendants, Plaintiffs' motion must be denied.")

Finally, this case already has been pending for a significant amount of time, and disqualification will result in further delay of trial and duplication of costs and legal and judicial

11

resources. Taking all three factors into consideration, the balance weighs against disqualification.

## CONCLUSION

For all of the foregoing reasons and the additional reasons stated in Ethicon's Opposition Brief, Plaintiffs' motion should be denied.

Respectfully submitted,

/s/   James T. Shearin
James T. Shearin (ct 01326)
PULLMAN & COMLEY, LLC
850 Main Street
Bridgeport, CT 06601
(203) 330-2000
Tel. (203) 330-2000
Fax (203) 576-8888
jshearin@pullcom.com

Steven M. Zager (phv05004)
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036-6745
Tel. (212) 872-1037
Fax (212) 872-1002
szager@akingump.com

Amanda R. Johnson (phv05005)
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Ave., N.W.
Washington, D.C. 20036
Tel. (202) 887-4126
Fax (202) 887-4288
arjohnson@akingump.com

*Attorneys for Defendant*
*Ethicon Endo-Surgery, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2011, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/   James T. Shearin*
James T. Shearin (ct 01326)