UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TYCO HEALTHCARE GROUP LP and UNITED STATES SURGICAL CORP., *Plaintiffs*, v. ETHICON ENDO–SURGERY, INC., *Defendant*. | Civil No. 3:10CV60 (JBA) September 17, 2012 |

RULING ON PLAINTIFFS' MOTION FOR FEES

Plaintiffs Tyco Healthcare Group LP and United States Surgical Corporation (collectively, "Tyco")  move [Doc. # 157] for an award of attorneys' fees and costs, pursuant to the Court's December 30, 2011 Ruling [Doc. # 155] and Order granting in part Plaintiffs' motion to disqualify Defendant's attorneys. For the reasons that follow, Plaintiffs' motion is granted in part.

I.      Factual Background

On the eve of trial in this complex, strenuously–litigated patent case, Ethicon's counsel from Akin Gump informed Tyco's counsel that Akin Gump had hired and intended to use for trial the trial graphics expert who had served as Tyco's *own* trial graphics consultant for the first phase of the trial related to these patents.  Needless to say, Tyco's counsel, knowing the exposure to their trial and witness strategy, and attorney work product that this man had had in their war room and throughout the trial of the first phase, were understandably alarmed and after brief Court–ordered discovery moved to disqualify defendant's attorneys, who had also been trial counsel in the first phase. What followed Ethicon's disclosure was a scramble by Tyco's counsel to find out exactly what Michael Greer had been doing for Defendant's counsel, in the face of representations by Defendant's

counsel vastly understating the nature, scope, and magnitude of his work, their resistance to permitting Mr. Greer's deposition and their failure to produce the category of documents that would permit Tyco's inquiry to proceed promptly and adequately. After these difficulties were resolved by the Court, a hotly–disputed Motion to Disqualify was filed, followed by two rounds of briefing and oral argument. The Court's ruling granting Plaintiffs' disqualification motion with modifications was issued, the trial schedule was adjusted, and a bench trial was recently concluded.

Tyco seeks $191,549.25 in attorney fees and costs for attorney and paralegal work on this disqualification motion.[1] While Ethicon agrees that Tyco is entitled to a fee award for this "complicated and sensitive" matter, it maintains that there was no justification for six attorneys and one paralegal to devote 445 hours, which it concludes reflects substantial duplication of effort, Ethicon also disputes the reasonableness of the hourly rates claimed, which further drive the size of fee sought.[2]

II.    Discussion

To calculate a fee award, "courts traditionally employed the 'lodestar' method: first the court multiplied a reasonable number of hours worked by a reasonable hourly rate to calculate the 'lodestar' amount, and then adjusted the lodestar amount up or down based on case–specific factors." *Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, No. 3:03 CV 599(CFD), 2011 WL 721582, at *3 (D. Conn. Feb. 22, 2011) (citation omitted).

---

[1] This figure reflects a 10–percent discount applied by Tyco to the total fees sought in this matter. (Pls.' Mot. at 7.)

[2] Defendant does not contest an award for costs of $3,065.26, and these costs will thus be awarded.

However, the Second Circuit has moved beyond the lodestar method, *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008), directing district courts to "first determine a 'reasonable hourly rate,' based on case–specific variables, and then multiply that rate by the number of hours reasonably expended to arrive at a 'presumptively reasonable fee.'" *Bridgeport & Port Jefferson*, 2011 WL 721592, at *3, quoting *Arbor Hill*, 522 F.3d at 190. The amount is "only presumptively reasonable"; it is still within the court's discretion to adjust the amount upward or downward based on the case-specific factors. *See Robinson v. City of NY*, No. 05 Civ. 9545(GEL), 2009 WL 3109846, at *3 (S.D.N.Y. Sept. 29, 2009) (citation omitted). "Hence, the process is really a four–step one, as the court must: (1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiple the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award." *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010).

    A.    Reasonableness of Rate

    Plaintiffs seek $850/hour for Drew Wintringham, who has been a patent attorney for thirty years, a partner at DLA Piper. They seek $725/hour for Frank Ryan, a patent attorney for eighteen years, and $680/hour for Mark Rueh, a patent attorney for sixteen years; both are also partners at DLA Piper. $355/hour are sought for Melissa Reinckens and Airina Rodrigues, then–fourth–year associates at DLA Piper specializing in intellectual property litigation, and $225/hour is sought for Joanna Sykes–Saaveedra, a second–year associate in commercial litigation in DLA Piper's New Jersey office. Plaintiffs offer no evidence of what patent counsel in Connecticut would charge in a comparably complex  patent  matter or whether Connecticut firms are sufficiently staffed to handle a matter of this size, and instead

maintain that if a reasonable paying client is willing to pay, and does pay the rates claimed, the hourly rates are presumptively reasonable. Plaintiffs also observe that Defendant offers no contrary affidavit or other evidence on the unreasonableness of the rates sought. Indeed, Defendant has offered nothing on this issue, including what rates it is paying and how much attorney time it expended opposing the motion, which might be probative of what is necessary or reasonable in the particular circumstances. *Serricchio v. Washovia Securities, LLC*, 258 F.R.D. 43, 46 (D. Conn. 2009) ("[I]t may be proper to permit a prevailing party to take discovery of its opponent's billing records where that opponent claims that the hours plaintiff's counsel expended were grossly excessive.").

The Second Circuit has required locality rates unless the qualifications of counsel are such that a reasonable client would pay these rates and could not get comparable representation from an in–state firm. *See Simmons v. New York City Transit Auth.*, 575 F.3d 170, 175–76 (2d Cir. 2009) ("[I]n order to overcome the presumption [of the forum rule], a litigant must persuasively establish that a reasonable client would have selected out–of–district counsel because doing so would likely . . . produce a substantially better net result."). In 2010, this Court awarded what it believed was then the highest hourly rate for work by Connecticut trial counsel of $465, *see Serricchio v. Wachovia Securities, LLC*, 706 F. Supp. 2d 237, 255 (D. Conn. 2010), based on the attorney's "extensive experience, high reputation, and remarkably successful results, and to reflect the reality of rate increases over time." *Id.*

National rates have been recognized as warranted where the expertise and speciality justify it. Having presided over the bench trial in this case, the Court is persuaded that a national rate is warranted here because of the high stakes, the technical complexity, and

4

multiplicity of claims and defenses regarding multiple patents and multiple products. The fact that the work on this motion had to be conducted in a very compressed time frame and raised issues of significant importance to both sides, of which Plaintiffs' trial counsel was already familiar—with both the patent issues and the disqualification factors—as a practical matter, no other attorneys could have effectively handled this case and motion at this point. *See, e.g.*, *Simmons*, 575 F.3d at 176 ("Among the ways an applicant may make such a showing [to justify a national rate] is by establishing . . . that no in–district counsel possessed such expertise."). Based on the Court's evaluation of counsel's expertise, the exigencies of litigating this motion on the eve of trial, and the amount of work that needed to be accomplished in a short time, the rates sought, despite the deficits in Plaintiffs' evidentiary support, are approved. *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) ("Because attorney's fees are dependent on the unique facts of each case, the resolution of this issue is committed to the discretion of the district court.").

      B.     Reasonableness of Time Expended

     Plaintiffs are seeking fees for 445.45 hours expended by three partners, three associates, and one paralegal. Tyco argues that the novelty and difficulty of the issues in its disqualification motion explain the time expended as reasonable and necessitated, because it was particularly labor–intensive, requiring attorney time for fact–gathering, research, and brief drafting. They claim that the contemporaneous time records of the respective attorneys which it has submitted provides "detailed explanations of the time, labor and level of skill required to address Defendant's improper actions and the law that applies to the issues of

disqualification"[3] in the eight categories of work it identifies. (Pls.' Reply [Doc. # 160] at 1, 3.) These are all certainly areas in which Plaintiffs' counsel were required to expend resources. Further, given the novelty of challenging a trial graphics expert cross–over, coupled with the tight time constraints in light of the imminency of trial, a 'team approach' was necessary to insure that all tasks were coordinated to permit timely completion of sequential tasks and review of Defendant's delayed disclosures of over 4,000 pages of responsive documents, which counsel had to review in a sharply constrained period of time.

In light of these factors, however, Tyco misstates what can be determined from many of the time/task disclosures because they are "block entries," or use "block billing"—i.e., billing a large number of hours for multiple tasks—which do not permit the Court to determine actual time spent on particular tasks, nor whether two lawyers are duplicating each other. *See Green v. City of New York,* 403 F. App'x 626, 630 (2d Cir. 2010) (affirming district court's application of hours reduction due to pervasive block billing in time entries submitted by counsel and concluding that the practice raised questions regarding the reasonableness of the entries). For example, the associates' entries which include "teleconference," or "multiple emails and telephone conferences," or "multiple conferences," are overly vague and do not parse out the duration or purpose of each task. Moreover, several of the entries utilize the term "attention to . . . ," a phrase which gives no indication of the work, if any, being performed.[4] These entries will be excluded.

---

[3] Plaintiffs have not provided any resumes to show the attorneys' credentials, only Attorney Ryan's affidavit which detailed the number of years each attorney has been in practice.

[4] *See id.* at 29 (Ms. Rodrigues spent 6.70 hours on "attention to deposition prep. for Greer deposition; draft rough deposition topics and document demand letter to opposing

Ethicon criticizes in particular Tyco's attorney time spent preparing for and taking the 3.5 hour deposition of Michael Greer. Under other circumstances, the 17 hours booked by Mr. Ryan, 14.7 by Ms. Reinckens[5] and 7.2 hours by Ms. Rodrigues[6] might be excessive, but the Court is willing to credit their necessity for this one, critical witness. Mr. Greer could be expected to be an uncomfortable, non–expansive witness, especially as he was now in the employ of Ethicon's law firm and represented by one of Akin Gump's associates, who prepared him. Additionally, he had booked 80 hours on this case for Ethicon, in addition to the 220 hours he billed previously to Tyco. Further, Tyco's counsel had to review over 4,000 documents related to Greer's involvement in the case and over 100 slides that he had created thus far for trial. A careful and informed strategy and deposition plan was critical for this deposition, and despite the shortcomings on time–task specificity, where collective brainstorming had great value, no time will be deducted.

The same is not true for the over–215 hours spent for research and preparation of briefs, particularly 160 hours on the reply brief.[7] The exigencies of preparing the motion and initial supporting memorandum, developing the factual record to track relevant case law and

---

counsel; review and analyze relevant caselaw."). *See also id.* at 30 (Ms. Rodrigues spent 6.60 hours on "attention to review and analysis of Ethicon's Opposition; . . . draft and revise counterpoints to each argument and points to distinguish cases cited.").

[5] These are entries of 1 hour on September 29, 2.10 hours on October 3, 5.40 hours on October 4, and 6.20 hours on October 5.

[6] This is the sum of entries from October 3 (0.3 hours) and October 5 (6.90).

[7] Defendant criticizes this time expenditure for only a "10 page reply." As Henry David Thoreau wrote, "[n]ot that the story need be long, but it will take a long while to make it short." *Letters to Various Persons* 169 (1879). The Court appreciates concise, focused briefing.

established principles, undoubtedly involved a multi–task team effort, justifying the nearly 60 hours billed by Ryan, Reinckens, and Rodrigues, because time spent in similar pursuit was not necessarily duplicative or unecessary.[8] However, the associate time on the reply briefing, their 70 hours of "preparation for oral argument" which was argued only by Mr. Ryan, and attending court proceedings must be reduced following judgment as either unnecessary or apparently duplicative, particularly given the relatively identical block time entries.[9] To account for such redundancies, the Court reduces the fourth–year associates' hours in preparing the Reply brief by 33.5 hours.[10] The Court further reduces the fourth–year associates' hours by 36.9, to account for the redundancy in hours spent "participating" in

_____

[8] However, the 1.50 and 3.50 hours of Mr. Wintringham's time on October 2 and 10 spent on "'attention to' disqualification issues" is excluded, as are his 4 hours on October 11 billed as "further attention to disqualification cases," and 2.25 hours on October 12, billed as "further attention to Ethicon brief . . . and prep for court conference regarding disqualification" after the brief was filed. The 3 hours billed on October 17 as "attention to disqualification reply briefing" and the 1.80 hours billed on November 16 as "attn to Ethicon supplemental court submission, analysis and discussion re same," are deducted for the same reason. The 2.30 hours of Mr. Rueh's time on October 7 for "'attention to' motion to disqualify and declaration" is similarly excluded.

Ms. Sykes–Saaveedra's time which consists of much "email correspondence" and "case summaries" is excluded since as a new attorney without IP expertise, it appears duplicative of the other two associates, except for the 10.80 hours spent on October 15 when sufficient specificity is provided to show her distinct, separate task of drafting an outline for the Reply.

[9] On November 11, Mr. Wintringham's 4.50 hours for "attn. to cases cited by Ethicon; confer on strategy. Work on oral argument on disqualification," is reduced by 3 hours, due to duplicativeness of entries and vagueness.

[10] The Court averaged the hours of Ms. Rienckens and Ms. Rodrigues on October 14, 15, 17, 18, and 19 and will award fees for the hours spent by *one* fourth–year associate working that average amount of time, to account for nearly identical billing entries pertaining to the preparation and drafting of the Reply brief. This totals 33.5 hours and will be deducted from each fourth–year associate's hours evenly.

and attending Greer's deposition, oral argument and in telephone conferences with the Court.[11]

The Court's determination of the number of hours reasonably expended in connection with the Motion to Disqualify is reflected as follows in Table 1:

Table 1

| Timekeeper | Hours Requested | Court's Adjustment (if any) | Reasonably Expended Hours |
|---|---|---|---|
| Wintringham | 40.05 | (-17.55) | 22.5 |
| Ryan | 110.5 | | 110.5 |
| Rueh | 6.8 | (-2.30) | 4.5 |
| Reinckens | 123.6 | (-16.75, -2.00, -5.3, -9.3) | 90.25 |
| Rodrigues | 96.7 | (-16.75, - 6.7, - 6.60, - 7) | 59.65 |
| Sykes–Saavedra | 53 | (all but hours from 10/15) | 10.80 |
| Ruppert[12] | 14.8 | | 14.8 |

---

[11] Specifically, the Court excludes the 7 hours spent by Ms. Rodrigues attending the Greer deposition on October 6, the 2 hours Ms. Rienckens spent "participating" in the October 12 telephone conference with the Court, the 9.3 hours spent attending oral argument on November 15, and the 5.3 hours spent "participating" in the November 23 telephone conference with the Court, in addition to the exclusion of 13.3 hours Ms. Rodrigues spent giving "attention to" certain tasks which is discussed *supra* at 6. This amounts to a total of 36.9 associate hours.

[12] Defendants do not dispute the paralegal entries or rate and thus, $3,922.00 will be awarded for Ms. Ruppert.

C.      Presumptively Reasonable Fee

Taking into account the Court's adjustment of hours reasonably expended, the Court will award fees as follows:

Table 2

| Timekeeper | Hours Requested | Reasonable Hours Awarded | Fees Awarded |
|---|---|---|---|
| Wintringham | 40.05 | 22.5 | $19,125 |
| Ryan | 110.5 | 110.5 | $80,112.50 |
| Rueh | 6.8 | 4.5 | $3,060.00 |
| Reinckens | 123.6 | 90.25 | $32,038.75 |
| Rodrigues | 96.7 | 59.65 | $21,175.75 |
| Sykes–Saavedra | 53 | 10.80 | $2,430.00 |
| Ruppert | 14.8 | 14.8 | $3,922.00 |
| Total | | | $161,864.00 |
| Total, with Tyco's 10% discount (see note 1 *supra*) | | | $145,677.60 |

D.      Final Fee Award

With the adjustments made as to the reasonableness of hours expended, the Court does not find that any other appropriate adjustments are warranted. Accordingly, the Court awards to Tyco an attorney fee of $145,677.60, and costs in the amount of $3,065.26.

10

III.    Conclusion

For the reasons discussed above, Plaintiffs' motion [Doc. # 157] for costs and fees is GRANTED in part. The Court awards $145,677.60 in attorneys' fees and $3065.26 in costs, for a total of $148,742.86.


IT IS SO ORDERED.


_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 17th day of September, 2012.